Good morning. Good morning, Your Honours. Mark Vanderhout appearing on behalf of Mr. Jiang, who's here in court today, and I'd like to reserve approximately three minutes for my rebuttal. We believe that the merits of the case can be resolved by answering two questions. Was petitioner's entry on the transit without visa in November 1989 an admission for purposes of the Chinese Student Protection Act? And two, did his departure and return, authorized by the executive order upon which the CSPA was based, somehow prevent him from being able to have the denial of his application for adjustment of status renewed before an immigration judge? And we believe... Repeat that again. The two questions. Second question. Second question. Did his departure and return subsequently in 1993, which was authorized by the executive order, somehow prevent him from being able to have the denial of his application for adjustment of status renewed before an immigration judge? Let me ask you also to address... I'm sorry, Your Honour. Let me ask you also to address both you and the government have asked this court to hold this up for Chen. And I'm seeing this case as somewhat distinguishable, so I want to know what your position is by what guidance you, you know, how you hope Chen will add to your argument or give us guidance in deciding this case. Okay. Well, let me just briefly then address that first, because I think that's a prerequisite. The... Chen dealt with the, obviously, the Affirmatives Without Opinion issue, which we briefed to the court. Chen said that the interpretation of the effect of the Chinese Student Protection Act and the regulations were not a straightforward issue, were not insubstantial, and therefore, the board was incorrect in affirming without opinion under the regulations. And although Chen involved the same act, the CSPA, it's a different issue. It involved the same act and involved whether or not the parole... He and Chen, the individual argued the mere conferring of deferred and forced departure conferred parole, and therefore, he was authorized to apply for adjustment of status. We don't have that underlying issue in this case. It's a different question, correct. But as to Chen's language, we thought it was broad enough that it might require remand here. As to the Affirmatives Without Opinion... Broad in terms of the streamlining issue? In terms of only in terms of the streamlining issue. The underlying issue is completely different. And so let me go back then to the underlying issue here, those two questions. As to, we think that the answer to the first question, was there an admission, is yes. And we think the answer to the second question, is he prevented somehow by his departure and return from having his case, his application renewed before an immigration judge? The answer to that is no. And let me explain. There were three options as to what his November 1999 entry was. It was either an admission, or parole, or as an entry without inspection, as the immigration judge found. But we believe that that was an impossible finding. It was clearly not an entry without inspection. As the court in Lam Pho Song cited in a reply brief at page five... Tell me why that's impossible. Do you mean a physical impossibility? What do you mean by impossible? Well, no. Because he presented himself. He was inspected. He was given a TWOV status. He didn't present himself for entry and admission. Well, he did under the statute and the regulations, Your Honor. Yes, he has to, because under the regulations... He presented himself only to the extent of, you know, of the transit visa. That's correct. But the transit visa, under the statute and the regulation, is deemed an admission. The references to that we cite in our brief under 8 U.S.C. 1182 D.4, a TWOV is a temporary admission of a non-immigrant. That's what it says under the statute. That's 1182 D.4, temporary admission of a non-immigrant is what a TWOV is. Also, under 8 U.S.C. 1255 C.3, the bar to status, it says that it exempts any alien who was admitted in transit without visa status. Those individuals are barred from adjustment of status. But they took his passport and they told him what he just gets to... He's not supposed to even leave the airport and he goes outside the terminal. I mean, it's just basically to get him back, right? I mean, there's certain requirements of this temporary admittance. But Your Honor, we have to... He was first given the status in Miami. He was then allowed to enter the United States on the TWOV. To go home, right? I mean, not to go out in the airport and go live in the community. Well, that's correct. But that's no different than someone who's admitted for two weeks on a non-immigrant visa. But aren't they considered in airport custody while in it? There's all these requirements in terms of it. It can only be, you can't get, I don't know, has something to do with whether you can't get another ticket. And then there are... Isn't there a 12-hour requirement or something along those lines? It's not... Correct yours. And so he was allowed to leave Miami, fly to San Francisco, and then he was supposed to continue on out of the country at that point in time. Yeah, not leave the terminal and go live out in the community. For how long? Well, he's lived for many years now. But that is... Still here? Yes, he's here in court today. All right. And Your Honor, but that's no different than someone who's admitted as a tourist for one week and then is supposed to get back on that plane and leave the United States. And that person then stays in the community. Well, I think it's a lot different because they're considered in airport custody during the time that they have this... They're not said you can be here for a week. They're supposed to stay there and they're in airport custody. That's correct. He's only allowed to be there for eight hours as opposed to one week. But we don't think that's a legal difference. Once he's authorized to remain in the United States for any period of time, he was in lawful status. And the statute says you're admitted as a TWOV. And the case law, as a matter of fact, we cited in page 44 of opening brief, matter of Davis, which is the Board of Immigration Appeals decision, says that that individual was admitted as a TWOV and overstayed the permitted time allowed in the United States and charged them with an overstay. All the BIA cases, matter of Ching and Chen, which we cited in our materials to you, also state that that was an admission. Every case that discusses this discusses it in terms of the statute and the regulations. The INS regulations that no longer apply because the TWOV status is no longer permitted. But it's established that the TWOV is an admission and that was at 8 CFR 214. Why don't you go to your next argument? Okay. Because I think you have stronger arguments than that one. The argument regarding the fact that he left and came back in doesn't change his status. It's under the executive order. Under the executive order, the combination of Section 2 and Section 3 say that he's allowed to leave the United States, come back in, and to the status he was in. Section 3 says you maintain lawful status for the purposes of adjustment of status as long as you were in lawful status at any time. No, but isn't that the regulation that has another condition, namely that he has to return in order to pursue? I'm talking about the executive. I'm sorry, Your Honor. I'm talking about the executive order, not the regulation. The executive order authorized, and that's why it's different than all the other adjustment status cases, because under the CFPA he was allowed to leave the United States, return, and pursue adjustment of status subsequently as long as he was ever in lawful status. He was in lawful status as a TWOV for a short time, admittedly, but he was in that. He was deemed to maintain that lawful status under Section 3B of the executive order, and therefore, he was allowed to adjust status. And I see I have one minute. Do you want to reserve that? Yes. All right. We'll allow you to do that. Thank you. May it please the Court. My name is Luis Perez. I represent the United States in this matter. With respect to the Shen issue, Your Honor, the government's position is that although this case involves the same statute, the Chinese Student Protection Act, the underlying issue is different, and there is case law, binding case law, to the Board of Immigration Appeals addressing these issues. That case law is Thang v. Reno, which is cited in Respondents. Well, why did the government then present us with a stipulation to stay this, depending on the outcome of Chen? The reason is because after Chen was issued, this Court, a couple of weeks later, issued Ferreira v. Ashcroft. And in Ferreira, what the Court held is that the streamlining issue should not be reviewed separate from the underlying merits. Well, wait a minute. Did it say it should not? Or in that case, it didn't have to be? Excuse me? There's a difference between saying it should not, namely it can't ever be done in any case, or in this case, it's not necessary to do that. Isn't that all Ferreira said? Yes, Your Honor. But the reason why Ferreira says that is because by reviewing the underlying issue, you are actually reviewing the appropriateness of the streamlining decision. The reason why, to go back to Judge Callahan's question, the reason why the government, if the Court goes into deciding if Ferreira and Chen go hand-in-hand is because the panel, a member of this Court, Suas Ponte, asked for a re-hearing in bank in the Chen case. And the government is going to submit tomorrow its brief explaining why there might be a conflict between Ferreira and Chen. And if the Court wants to, if this panel wants to address this issue in this case, we will ask this panel to hold that issue in abeyance until the Court decides if it wants to hear this issue in bank. If the... All right, then the issue, I guess then that goes to my next point. Obviously, this was a summary affirmance by the BIA. All right, if they shouldn't do that if the appellant has some substantial issue that would require them to do more, right? Some colorable issue that he has to argue. Is that, are you telling me that he does? Should they have not summarily affirmed here? No, Your Honor. All I'm saying is that there are no novel issues in this case. There was... Well, I guess I'm getting confused by that. You're saying there's no novel issues, but then by the other hand, the message that I'm getting from you when they're saying stay this pending the decision in Chen, then if that hasn't really been decided and it might affect this, did he have a novel issue and the BIA shouldn't have summarily affirmed? You can't have it both ways. No, Your Honor. All I'm saying is that if the Court decides to address whether Ferreira and Chen are in conflict, then this Court should hold that part of this case in abeyance until the Court decides whether or not it wants to hear the issue in back. But if the Court wants to go ahead and decide whether Chen applies to this case, then the government's argument is it doesn't apply because the underlying issue here was squarely resolved by federal precedent that is binding. Say that again. I'm sorry. I didn't get what you said there. Can you go back over it? No, why doesn't Chen apply? Chen doesn't apply because when the Board issued its ruling, there was binding federal case law with respect to the underlying issue of this case. So based on that binding case law for the Board, the Board appropriately streamlined the case, this case. Give me the citation to that underlying. Sure. Just the name of the case. Sure. Time versus Reno and the Sharma versus Reno case, which is a Northern District of California case that is binding to the Board of Immigration Appeals because it's a federal case that arises of the Northern District of California, which also includes San Francisco. So it's binding federal case law to the Board of Immigration Appeals. Are you telling me now that it's the policy of the Board to accept the District Court decisions as binding? Well, the thing is that the streamlining regulation talks about either Board precedent or federal precedent. Can you answer my question? Is it the policy of the Board to accept District Court decisions as binding? Yes, Your Honor. It's binding because it's a federal court. And if you read the streamlining regulation, it basically says questions of law that have been squarely resolved either by Board precedent or federal precedent. Going into the merits of the case, the government's contention is that Mr. Yang was never admitted into the United States as an alien in transit without visa. If you look at the, sorry, if you look at the, at 8 U.S.C. 1255 C-3, that statute prohibits aliens in transit without visa from applying for adjustment of status. Now, in order to qualify for inspected and admitted for parole, if the statute deprives an alien in transit without visa the opportunity to apply for adjustment of status, it's because he was never admitted. Also, if you Let me just, I'm going to read something to you and then tell me why I'm wrong. All right. Tell me why this is wrong. All right. The parties do not dispute that there are two separate regulations setting forth eligibility for adjustment of status, one of which expressly applies to applicants like Yang under the CSPA. Unlike the general regulation 8 CFR 245.2, the CSPA regulation 8 CFR 245.9 does not expressly bar applicants, including arriving aliens, from renewing adjustment applications during removal proceedings. In light of these considerations, Yang's argument that 8 CFR 245.2 does not apply to him as an applicant under CSPA is colorable. All right. Why, tell me why I would be wrong. Are you starting from the Shen decision? No. Just something I wrote down and something that I'm thinking about. Okay? Okay. Tell me why that's not a colorable argument when you've got these two schemes. Well, first, the Essentially, I'm saying there isn't a board decision, there isn't federal law on this. Tell me why I'm not wrong. Can you repeat that, Your Honor? No, I can't go through what I just read. Basically, Your Honor, I don't understand the entire paragraph that you've read, but I think I can respond to your question by saying that the Chinese Student Protection Act, it incorporates INA 245, and INA 245, and that is currently resolved by this Court in the case of Tang versus Reno. In the case of what? Tang versus Reno, Your Honor. It's cited in our brief. The citation to that case is 77 F. 3rd 1194 at pages 1197 and 1198. And what that case says, basically, is that the Chinese Student Protection Act lists exclusions of several provisions of INA 245 that do not apply. And what this Court held in that case is that if in that list of exclusions, there are certain provisions of the INA 245 that are not necessarily applied to the Chinese Student Protection Act. One of those provisions, and is the one address in the Tang case, is INA 245A, which basically says in order to apply for adjustment of status, you have to be either inspected and admitted or paroled. Let me get back, Mr. Perez, to your argument that he was not inspected and paroled. In the regulations, an applicant for admission under the TWOV program must establish that he is admissible, right? That's what the regulations require. That's correct. So in this case, the applicant established that he was admissible because he was given that visa, right? Yes, Your Honor, but two... Let me finish my question. Number one. Number two, when he arrived in Miami, he was inspected because, isn't that true? And the regulations further require, or the statute, 1225A3, that all aliens who are seeking to transit through the U.S. shall be inspected by immigration officials. And he was inspected in Miami. So wasn't he inspected and admitted? No, Your Honor. Why is that conclusion wrong? First of all, in response to your question, and my time is up, if you... Well, answer the question, please. Okay. If you look at page 166 to 168 and 177 to 179 of the administrative record, Mr. Yang testified that he was never inspected. He also testified that his passport and his documents were taken from him in Panama. So there is really no evidence that he was inspected. In response to the first portion of your question, it does say that he has to establish admissibility, but that doesn't mean that he is admitted into the United States. And in order to be admitted, you first have to be inspected. And this court has defined admission and admitted in Shibaraman v. Ashcroft, 360 F. 3rd, 1142, on page 1146, basically by saying admission and admitted is an alien who has lawful entry into the United States. This does not happen here. And also, in response to your question, when an alien absconds after having temporary... being here under T.W.O. privilege, he converts himself into an Igui, as someone who is here, who had entered without inspection. And there is federal court case law that we set in our... in our... in our... from the First Circuit and the Southern District of New York in support of that proposition. My time is up. If the court doesn't have any further questions, I will submit. All right. Apparently, there are no further questions. Thank you. Thank you. You have one minute for rebuttal. Thank you. Briefly, as Judge Tsushima pointed out, the regulations at 214.2c.1 and the BIA decision in matter of Ching and Chen say that in order to be granted T.W.O.V. status, you have to be inspected and admitted. And that's what the regulation in the case law says. The immigration judge's finding that he entered without inspection just can't be upheld. And I just want to submit to the court, even if the court were to disagree with us, it can't affirm the decision of the agency under Chenery, because the agency's decision is that there was an entry without inspection. We submit clearly that's wrong. I'm sorry, because the agency decision what? Because the immigration judge's decision, which is deemed to be the decision of the agency, says that there was an entry without inspection. And we submit that's clearly wrong. It was clearly inspected and admitted. There's a dispute, perhaps, of whether it was admission or parole. We think it was admitted. But it clearly wasn't an entry without inspection. So the immigration judge's decision is clearly wrong. And the agency decision can't be affirmed under Chenery. Well, what about Mr. President's point that, well, he couldn't have been inspected because, you know, the airline had all his travel documents? Under the T.W.O.V. procedure, the airline does keep the documents, but he is inspected. That's what the regulation says. And that's what the matter of Ching and Chen says. She says you have to be inspected, you have to be admitted, and then you're given that T.W.O.V. status, even if it's for a matter of hours. So we believe, Your Honors, that those decisions control. And lastly, under Chen, it's clearly, at least, Achilles is not an insubstantial issue. It's obvious a case law might be interpreted differently, but it can't be deemed insubstantial. So we submit under Chen that it was improper to affirm without opinion. Thank you very much. Thank you. The matter will now stand submitted.
judges: Bright , Tashima, Callahan